IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEBORAH DENISE THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:09CV969-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Deborah Thomas brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under the Social Security Act.[1]  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.  Rather, the court examines the administrative decision and scrutinizes the record as a whole

---

[1] Plaintiff also filed an application for disability benefits under Title II.  Her date last insured, however, preceded her alleged onset date by a month.  (See R. 49).  In his hearing notices, the ALJ stated the issue to be considered as pertaining only to plaintiff's claim for SSI benefits.  (Exhibits 6B, 7B).  Plaintiff did not object to the ALJ's statement of the issue.

to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## BACKGROUND

Plaintiff was born on September 19, 1966, and completed one year of college in 1989. (R. 80, 89). She filed the present application for disability on December 19, 2005, alleging that she became disabled on November 1, 2005 due to pain resulting from a "pinched nerve" in her back. (R. 80-97). The only medical evidence plaintiff identified in her application was the record of her treatment at the Jackson Hospital emergency room one month previously, on November 15, 2005, for back pain; she noted that an "MRI/CT scan" was performed on that day. (R. 87-88). In her treatment note for that visit, the emergency room physician indicated a "nml inspection" of plaintiff's back and, regarding plaintiff's extremities, she noted "non tender," "full ROM," and "no pedal edema." Plaintiff's neurological examination

was also normal, including a negative straight leg raise. While plaintiff's physical examination was unremarkable, her MRI revealed that plaintiff had an "L5-S1 large disc herniation with central spinal stenosis from the disc material." The ER physician referred plaintiff to a neurologist. (Exhibit 1F). Plaintiff provided no additional evidence to the Disability Determination Services, and the disability examiner denied her claim in February 2006. (Exhibit 1A-4B). A non-examining state agency physician concurred with the disability examiner's conclusion that plaintiff could perform the exertional requirements of light work, with some environmental and postural limitations. (Exhibits 2F, 3F).

On January 23, 2008, at the hearing before the ALJ, plaintiff provided evidence of her initial evaluation by a VA physician on May 31, 2006, for complaints of low back pain and her subsequent treatment by VA physicians between February 2007 and November 2007 for back pain and gynecological problems. (Exhibit 4F; see R. 19). After the hearing, the ALJ requested a neurological consultative examination, which was scheduled for 8:45 a.m. on Monday, March 3, 2008. (R. 265). By letter dated February 28, 2008 – the Thursday preceding the examination – plaintiff sent the ALJ a copy of a July 23, 2007, MRI from Baptist Hospital, and requested that the ALJ "forward these records to the CE for the neurological exam and report." (Exhibit 5F).[2]  The July 2007 MRI report showed "L5-S1

---

[2] The correspondence bears no indication that it was sent to the ALJ in any manner other than by mail. (See R. 258; *compare* R. 115 (noting hand delivery of later correspondence from plaintiff's counsel) and R. 125 (noting facsimile transmission of counsel's correspondence to Appeals Council; also bearing facsimile legend). Counsel points to no evidence that the ALJ received his letter in time to forward it to Dr. Pacquiao before Dr. Pacquiao evaluated the claimant and dictated her report of the March 3, 2008, consultative examination. (See R. 267; report transcribed on March 4, 2008). In plaintiff's brief before this court, as in his letter to the ALJ and to the Appeals Council, counsel makes much of the fact that he submitted the MRI report to the ALJ "[p]rior to the examination[.]" (Plaintiff's brief, pp. 3-4; see also

3

degenerative disc disease with large broad base midline disc herniation" which was "indenting and dorsally displacing dural sac and likely impinging on both proximal S1 root sleeves." (R. 261). The radiologist observed that the "[f]indings appear similar to those described on the prior report from 2005, but do not have those images for direct comparison." (Id.). When she reported to Dr. Pacquiao for the consultative neurological examination on Monday morning, plaintiff told the doctor that she had a lumbar spine MRI the previous year which showed "a large disc." (R. 266). However, Dr. Pacquiao did not have a copy of the 2007 MRI report. Dr. Pacquiao conducted a physical examination, noting no abnormalities other than "mild tenderness to palpation and percussion, more on the left side on her lumbar spine than the right." She observed that plaintiff had not "tried physical therapy or epidural injections for treatment" and that "she needs further evaluation and treatment by a neurologist, and if needed, by a neurosurgeon." Dr. Pacquiao concluded, "At this time, her neurological exam is within normal limits." (R. 267). Dr. Pacquiao completed a Medical Source Opinion (Physical) indicating that plaintiff can stand, walk and sit for a total of four to five hours each in an 8-hour day; that she can occasionally lift and carry twenty pounds; and that she is limited to occasional climbing, stooping, kneeling, crouching, crawling and to occasional pushing and pulling with her upper and lower extremities. (R. 268-71). A vocational expert, Dr. Robert Beadles, Jr., had testified at the administrative hearing. (R. 33-35). After he received Dr. Pacquiao's report and physical capacities evaluation, the ALJ sent

---

Exhibit 11E, 14E). He does not, however, include the date on which he provided the report. (See Plaintiff's brief, p. 3). This argument – while technically accurate – is disingenuous.

interrogatories to Dr. Beadles, including a hypothetical question based on Dr. Pacquiao's physical capacities evaluation. (Exhibit 12E, see question # 11 at R. 119).

The ALJ proffered the post-hearing evidence from Dr. Pacquiao to plaintiff's counsel by letter dated April 28, 2008, with a copy sent to the plaintiff. (Exhibit 10E). The ALJ's letter noted plaintiff's right to submit written comments, additional records, or interrogatories to be sent to Dr. Pacquiao. The ALJ further stated:

> You may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law. *If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision.* In addition, you may request an opportunity to question witnesses, including the author(s) of the enclosed report(s). I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.

(R. 113)(emphasis added).

Plaintiff's counsel responded by letter dated May 7, 2008 – this time providing it to the ALJ "via hand delivery." He protested the ALJ's failure to forward the 2007 MRI report to Dr. Pacquiao for the consultative examination and concluded, "Under the circumstances, additional questioning of the author of the report is necessary to fully inquire into the issues relating to the claimant's neurological condition and residual functional capacity. Accordingly, the claimant requests a supplemental hearing, including [] an opportunity to question Dr. Pacquiao as a witness at the supplemental hearing. If Dr. Pacquiao declines to appear voluntarily at the supplemental hearing, the claimant requests that Your Honor issue

5

a subpoena requiring her to appear and testify at the hearing." (Exhibit 11E, R. 115-16).[3]

The ALJ did not respond to plaintiff's request and held no supplemental hearing. He issued a decision on July 23, 2008, concluding that plaintiff has "severe" impairments of herniated disc and abdominal pain, but that she does not have an impairment or combination of impairments that meets or medically equals an impairment in the "listings." The ALJ determined that plaintiff retains the residual functional capacity to perform a full range of light work. He found that plaintiff can perform "her past relevant work as a short order cook" and, also, the job of short order cook and other jobs existing in significant numbers in the national economy.[4] He concluded, therefore, that plaintiff was not under a disability, as defined in the Social Security Act, since December 19, 2005, the date she filed her application. In his decision, the ALJ did not acknowledge plaintiff's request for a supplemental hearing. (R. 312-18). He assigned "great weight to the findings and opinion of consultative examiner Dr. Pacquiao whose examination was essentially unremarkable" (R. 316); he further relied on Dr. Beadle's response to the hypothetical question in the post-hearing interrogatories that the limitations expressed by Dr. Pacquiao permit a "full range of light" and would allow performance of work as a short order cook, convenience store clerk,

---

[3] On May 29, 2008, the ALJ sent plaintiff's counsel a similar proffer letter regarding the interrogatories completed by Dr. Beadle; plaintiff did not respond to this letter. (Exhibit 13E).

[4] The VE testified that plaintiff's past work as a short order cook was not performed at the SGA level. (R. 34, 118). Accordingly, it was not "past relevant work" for purposes of a step four decision. See 20 C.F.R. 416.960(b)(1)("Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.").

and hotel clerk (R. 317).[5]

**DISCUSSION**

In the present appeal, plaintiff contends that "it was an error for the ALJ to not allow the claimant an opportunity to cross-examine Dr. Pacquiao and otherwise further present her claim at a supplemental hearing." (Doc. # 14, p. 6). In response, the Commissioner argues that the ALJ complied with the agency's policy by proffering Dr. Pacquiao's report to the plaintiff and did not err by failing to allow plaintiff to cross-examine Dr. Pacquiao. He contends that, in the Eleventh Circuit, "a claimant's right to due process is violated in this situation only where an ALJ substantially relies on post-hearing medical reports that directly contradict the medical evidence support and claimant's contentions and the ALJ denies disability benefits without giving the claimant an opportunity to subpoena and cross-examine the authors of those documents," and maintains that, here: (1) "[p]laintiff does not assert that Dr. Pacquiao's report directly contradicts the medical evidence supporting her contentions[;]" and (2) "the ALJ did not substantially rely on Dr. Pacqu[ia]o's report or functional capacity assessment in determining Plaintiff's residual functional capacity." (Commissioner's brief, Doc. # 15, pp. 7-8). Finally, the Commissioner argues that, even if the ALJ erred, the error was harmless because it would not change the ALJ's decision. (Id. at 8).

In Cowart v. Heckler, 662 F.2d 731 (11th Cir. 1981), the Eleventh Circuit found a due

---

[5] Plaintiff submitted additional evidence to the Appeals Council. (See R. 4; Exhibits 7F-11F). In his brief to this court, he claims that he attached these exhibits to his request to the ALJ for a supplemental hearing. (Plaintiff's brief, pp. 4-5). However, all of these exhibits include treatment notes, evaluation reports and/or test results dated in 2009; it is not possible that these exhibits were attached to plaintiff's counsel's May 7, 2008, letter to the ALJ requesting a supplemental hearing. Additionally, the only attachment plaintiff's counsel references in his letter to the ALJ requesting a supplemental hearing is his "February 28, 2008 letter and the enclosures." (R. 115). The letter and enclosed MRI report are at Exhibit 5F.

process violation where the unrepresented plaintiff – who had not waived her right to representation – "was not given an opportunity to examine or challenge [two post-hearing consultative physicians' examination reports], nor to cross-examine the physicians, prior to the ALJ's decision" and the ALJ had based his decision "in large part" on the reports. Id. at 737. In Hudson v. Heckler, 755 F.2d 781 (11th Cir. 1985), the plaintiff was represented by a paralegal. The ALJ ordered a post-hearing psychiatric evaluation, and invited plaintiff's representative to respond to the report. Plaintiff's representative responded by sending her client for an additional examination and submitting the psychologist's report to the ALJ. Id. at 783. The Eleventh Circuit noted that "[d]ue process is violated when a claimant is denied the opportunity to subpoena and cross-examine those who submit medical reports." Id. at 784. The court found that the plaintiff "had the opportunity to cross-examine [the physician] but chose to waive that right[,]" even though the ALJ had not advised the paralegal representative of her right to respond to the report by cross-examining the doctor. Id. The court found that the ALJ had no duty to inform the representative of plaintiff's right to cross-examine the physician and that her "failure to cross-examine constituted a waiver of the right, and thus no due process violation occurred." Id. at 785.

Another relevant case, Demenech v. Secretary of the Dept. of Health and Human Services, 913 F.2d 882 (11th Cir. 1990), was a cessation of benefits case. Plaintiff's treating physician and one post-hearing consultative examiner concluded that plaintiff still suffered from disabling limitations. However, Dr. Goldberg, a second post-hearing consultative physician, concluded that the plaintiff had no limitations in his ability to perform work-related activity. Id. at 883. Plaintiff's attorney objected to Dr. Goldberg's conclusions by

8

affidavit. The attorney also requested the opportunity to depose Dr. Goldberg and respond to his report. Id. In reaching his conclusion that the plaintiff had improved sufficiently to return to his previous employment, the ALJ relied substantially on Dr. Goldberg's report. Id. at 882-83. The Eleventh Circuit rejected the Secretary's argument that written objections were sufficient to ensure a full and fair hearing. It held that the plaintiff was deprived of his due process rights when he was not permitted to cross-examine Dr. Goldberg, since the ALJ relied substantially on his report and since it directly contradicted the medical evidence supporting the plaintiff's contentions. Id. at 884-85.

More recently, in an unpublished opinion, the Eleventh Circuit found no due process violation in an ALJ's refusal to allow the claimant to cross-examine the consultative physician who prepared a post-hearing report concluding that the claimant did not suffer from disabling limitations where: (1) the ALJ rejected the contrary opinions of the claimant's treating physicians properly; (2) the post-hearing consultative physician's report was consistent with the reports of three other consultative physicians who examined the claimant before the hearing; and (3) the ALJ did not substantially rely on the post-hearing examiner's report to deny benefits. James v. Barnhart, 177 Fed. Appx. 875 (11th Cir. 2006).

In the instant case, the plaintiff presented no medical opinion from any source that she suffered from disabling functional limitations. In April 2007, she asked her primary care physician at the VA for "paper work to take to Social Security hearing regarding back" and told him that he had said previously that she would need surgery. However, the physician advised her that she would have to be further evaluated before surgery could be recommended. (R. 216). He scheduled her for a CT scan. A VA physiatrist, Dr. Bhambhvani,

9

noted that the CT scan was "pretty much within normal limits." Plaintiff's physical examination also resulted in normal findings, except for mild tenderness around plaintiff's lumbar spine and 50 % lumbosacral range of motion "because of pain with motion in flexion, extension, and side bending as well." (R. 213). In May 2007, plaintiff had EMG and NCV studies at the VA hospital. Dr. Eng interpreted them to show right L5-S1 lumbar radiculopathy of mild severity and, also, a "motor axonal loss peripheral neuropathy of unknown etiology of mild to moderate severity" requiring further evaluation by neurology. (R. 211-12). Plaintiff eventually reported to a VA neurologist, Dr. Nakhasi, for evaluation in early October 2008, seven months after Dr. Pacquiao's consultative examination and two and a half months after the ALJ issued his decision. Dr. Nakhasi reviewed plaintiff's MRIs, CT scan, and EMG/NCV studies. Plaintiff's motor and sensory exam was normal, her tendon reflexes were symmetric and she exhibited no proximal and distal leg weakness. Dr. Nakhasi indicated that plaintiff had clinical signs and MRI evidence of L5-S1 disc disease, for which he recommended "Rehab and surgical consultation if needed." He further noted that clinical examination did not reveal any signs of neuropathy, even though it was reported by Dr. Eng in plaintiff's EMG and nerve conduction study. He recommended follow-up in six months due to the "EMG based subclinical neuropathic syndrome" and also recommended "rehab consult in case she wants adv[ic]e about her ability to work or function." (R. 302-03).[6] He did not render any opinion about plaintiff's functional limitations.

---

[6] The Exhibit 11F document, additional VA medical records plaintiff that submitted to the Appeals Council, were printed on April 22, 2009, but do not include any indication that plaintiff had any further treatment from the VA after November 2008. (See R. 289-96).

10

While the plaintiff did not offer any examining or treating physician opinions contrary to Dr. Pacquiao's view regarding her functional limitations, Dr. Pacquiao rendered her opinion without the benefit of the results of *any* of plaintiff's previous diagnostic tests. When Dr. Pacquiao performed her March 2008 consultative examination she did not, as noted above, have plaintiff's July 2007 MRI report, which plaintiff's counsel first mailed to the ALJ late the week before. With regard to plaintiff's medical records, Dr. Pacquiao stated only that she had "received extensive medical records regarding plaintiff's gynecological issues." (R. 266). It appears that she also did not have – or did not review – the November 2005 MRI report included within Exhibit 1F which, according to the radiologist who evaluated plaintiff's July 2007 MRI, had similar findings. Additionally, although Dr. Pacquiao apparently had received Exhibit 4F, which documented plaintiff's course of treatment at the VA for gynecological problems and also for back pain, she noted only the gynecology records. She did not note the treatment for back pain or the EMG/NCV results. Dr. Pacquiao's "impression" was "[h]istory of a 'large disc' on the lower back according to the patient's account[,]" rather than the L5-S1 disc herniation with central stenosis indicated as early as plaintiff's November 2005 MRI. While plaintiff has demonstrated no "direct conflict" as to any functional capacity assessment by an examining or treating physician, Dr. Pacquiao's diagnostic impression conflicts, to some extent, with the definitive diagnoses of L5-S1 disc disease with stenosis and lumbar radiculopathy rendered by physicians who had reviewed plaintiff's diagnostic tests. (See R. 131, 162, 212, 261).

There is nothing in the record to indicate whether Dr. Pacquiao's functional capacity would have been different had she been aware of the diagnostic test results. However –

11

despite the proffer letter – plaintiff was deprived of any meaningful opportunity to counter the report. When the ALJ proffered Dr. Paquiao's report, he advised plaintiff's counsel that, if plaintiff requested a supplemental hearing, he would grant the request unless he received additional records supporting a fully favorable decision. (R. 113). Plaintiff's counsel requested such a supplemental hearing, "*including* [] an opportunity to question Dr. Pacquiao as a witness[.]" (R. 115)(emphasis added). The ALJ did not, thereafter, advise plaintiff's counsel that he had decided not to grant the request for a supplemental hearing.[7] Had he done so, plaintiff's counsel may well have then sought to submit written interrogatories to Dr. Pacquiao, or might have attempted to secure and offer – as the plaintiff did in Hudson, *supra* – a report from a different consultative examiner. There is no indication in the record that plaintiff's counsel had any hint that his request for a supplemental hearing and for cross-examination of Dr. Pacquiao were denied until the ALJ issued his unfavorable decision.

The court does not here hold that the ALJ was required to permit Dr. Pacquiao's cross-examination at a hearing. However, by misinforming plaintiff's counsel regarding his

---

[7] The Commissioner cites the Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-7-30, Proffer Procedures, and argues that the ALJ complied with the agency's policy. (Commissioner's brief, p. 4). However, the cited policy states:

> The ALJ must address proffer comments in the rationale of the written decision. The ALJ must make a formal ruling in the decision or by separate order on any objections to proffered evidence, and make the ruling a part of the record. If the record must be kept open for the submission of additional evidence, the ALJ should set a time limit for the submission of the evidence. The ALJ should provide the claimant a copy of his/her ruling on any objection if the ruling is handled by separate order.
>
> If the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision.

HALLEX I-2-7-30.

intention to grant a request for a supplemental hearing, and then proceeding instead directly to an unfavorable decision, the ALJ deprived plaintiff of a fair opportunity to respond fully to the report. The court declines to find that plaintiff had such an opportunity simply because her attorney responded to the ALJ's proffer letter; the ALJ failed to acknowledge the objection presented in the letter and it is not, therefore, apparent that the ALJ considered it.[8]

Contrary to the Commissioner's argument, the ALJ relied substantially on Dr. Pacquiao's report. First, he relied on the report to a large extent in finding plaintiff's testimony to be less than fully credible. (R. 316). Additionally, he relied on the vocational expert's interrogatory responses stating that the restrictions included in Dr. Pacquiao's RFC assessment permitted the full range of light work and would not preclude the performance of work as a short order cook, convenience store clerk, and hotel clerk. (R. 317-18). Since the court cannot determine what the state of the evidence would be had plaintiff been accorded a fair opportunity to respond to the post-hearing report, it further declines to find the ALJ's error to be harmless.

---

[8] The Commissioner invites the court to speculate regarding the ALJ's rationale for declining to allow plaintiff to cross-examine Dr. Pacquiao. He argues:

> In short, the ALJ did not violate Plaintiff's due process rights because he offered Plaintiff the opportunity to subpoena Dr. Pacqu[ia]o. The ALJ used his discretion when he did not issue a subpoena because the information was not reasonably necessary for the full presentation of the case. As plaintiff's request for a supplemental hearing was based solely on this information and the ALJ determined the information was not reasonably necessary, the fact that the ALJ did not hold a supplemental hearing constitutes harmless error.

(Doc. # 15, p. 8). As noted above, however, the ALJ did not respond to plaintiff's request for a supplemental hearing and did not acknowledge it in his decision. It is not apparent that he considered the request at all, let alone that he "determined the information was not reasonably necessary." If the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

13

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ erred by depriving plaintiff of an opportunity to respond fully to Dr. Pacquiao's post-hearing report. The decision of the Commissioner is, accordingly, due to be reversed and this action remanded for further proceedings. A separate judgment will be entered.

DONE, this 3rd day of March, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE